1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11

ALEX ISTOK ACUNA,
CDCR #P-85538

12

Plaintiff,

13

14

vs.

15

MARCUS POLLARD, Warden, R.
VARGAS, Deputy Warden, M. GLENN, B.

16

HENDRICKS, HOWARD MOSELEY, S.
GATES, STEADMAN,

17

18

Defendants.

Case No.:  21cv01910-LL-AGS
**ORDER: DISMISSING FIRST
AMENDED COMPLAINT FOR
FAILURE TO STATE A CLAIM
PURUSANT TO  28 U.S.C.
§ 1915(e)(2)(B) AND § 1915A(b)**

**[ECF No. 11]**

19

20  **I.      INTRODUCTION**

21        On October 29, 2021, Alex Istok Acuna ("Plaintiff" or "Acuna"), an inmate

22  currently incarcerated at Richard J. Donovan Correctional Facility ("RJD"), located in San

23  Diego, California and proceeding pro se, filed a civil rights complaint pursuant to 42 U.S.C.

24  § 1983.[1] Plaintiff also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28

25  U.S.C.  § 1915(a). On January 20, 2022, the Court granted Plaintiff's IFP motion and

26

27

28

_____

[1] The action was originally filed in the United States District Court for the Northern District
of California and was transferred to this Court on November 8, 2021. ECF No. 3.

1

dismissed the complaint without prejudice for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See* ECF No. 7. The Court gave Plaintiff leave to file an amended complaint. *See id.* at 10–11. Plaintiff filed a First Amended Complaint ("FAC") on March 7, 2022.[2] ECF No. 11.

## II.   SCREENING PER 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)

### A.   Standard of Review

Plaintiff's First Amended Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 907 n.1 (9th Cir. 2014) (citation omitted).

"The standard for determining whether [a] Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

---

[2] Due to an administrative error, the amended complaint was originally filed as a new case. Once the mistake was discovered, the Court ordered the amended complaint filed in this case. *See* ECF No. 10.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

**B.    Plaintiff's Allegations**

Acuna alleges that on November 21, 2020, while he was incarcerated at RJD, a fellow inmate, Sancho, complained of diarrhea. FAC ¶ 4, *see also*, Pl.'s Ex. B. As a result, Sancho was moved into quarantine with other inmates who were positive for COVID, but Sancho was not tested for COVID until three days later, at which time he was "negative." FAC ¶ 4. Sancho nonetheless remained in quarantine with other infected inmates until December 5, 2020, when he was released and "mixed with the inmate population without having undergone further screening" for COVID infection. *Id.* By December 10, 2020, Sancho had developed a cough, and reported it to staff. Later that day he tested for positive for COVID. *Id.*; *see also* Pl.'s Ex. A. Sancho was returned to quarantine. *Id.* at ¶ 5.

Acuna states that "following inmate Sancho's removal into quarantine for the second time, numerous inmates in the same pod began to show coronavirus symptoms." *Id.* The outbreak started in the six-man dorm where Sancho had been housed when he was first released from quarantine on December 5, 2020. All five other inmates in Sancho's dorm eventually tested positive. *See* Pl.'s Exs. B–E. Acuna alleges the virus then spread to other dorms in the unit. FAC ¶ 5. Ultimately, sixty-six inmates in the unit tested positive for COVID. Acuna tested positive on December 16, 2021. *Id.* Acuna states that, at that time, "none of the inmates that began to test positive were quarantined or isolated as required by protocol." *Id.* at ¶ 6. Inmates who had tested positive were released from quarantine after 14 days without first obtaining a COVID test to confirm they were no longer infected. *Id.* at ¶ 3; *see also* Pl.'s Ex. C.

At some point after Acuna was infected, RJD officials "attempted to move infected inmates as well as non-infected inmates into an open gym with poor ventilation" and with bunks placed only three feet apart. *Id.* at ¶ 8. Acuna and several other inmates refused to be relocated to the gym because they were concerned about being re-exposed to the virus. *Id.*; *see also* Pl.'s Ex. G. Acuna was disciplined for his refusal to move to the gymnasium. *See* Pl.'s Ex. G at 16, 18–19. Acuna filed several grievances alleging the COVID protocols at RJD were insufficient and were contributing to the spread of COVID-19 at RJD, which were denied. *Id.* at 1–25. Acuna also filed health care grievances in February, March and April of 2021, stating that he was suffering from lingering effects of his COVID infection, including fatigue, "brain fog" and nausea, but medical staff at RJD were not taking his complaints seriously. FAC ¶ 10; *see also* Pl.'s Ex. G at 26–30. The grievances were denied. Pl.'s Ex. G at 26, 31–35.

Acuna names seven defendants, Marcus Pollard, Howard Moseley, R. Vargas, B. Hendricks, M. Glenn, Steadman and S. Gates. *See* FAC at 2–3. He seeks a declaratory judgment, compensatory and punitive damages, and an injunction requiring RJD officials to remove the "chrono" stating he refused to move to the RJD gym on December 28, 2020, from his file. FAC at 9.

## C.    42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

1  **D.  Discussion**

2       Plaintiff's primary contention is that Defendants violated his Eighth Amendment

3  right to be free from cruel and unusual punishment when they were failed to protect him

4  from catching COVID by ineffectively enforcing health protocols. FAC ¶¶ 1, 10. Plaintiff

5  also asserts that Defendants were deliberately indifferent to his serious medical needs by

6  failing to adequately treat him after he became infected with COVID. *Id.* at ¶ 10.

7       **1.  Eighth Amendment Deliberate Indifference Standard**

8       The Eighth Amendment prohibits the infliction of "cruel and unusual

9  punishments[.]" U.S. Const. amend. VIII. To state a plausible Eighth Amendment claim

10 for relief, a Plaintiff must allege facts sufficient to show that Defendants acted with

11 "deliberate indifference." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1068 (9th Cir.

12 2016); *Iqbal*, 556 U.S. at 678. "A prison official acts with 'deliberate indifference . . . only

13 if the [prison official] knows of and disregards an excessive risk to inmate health and

14 safety.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty.*

15 *of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)), *overruled on other grounds by Castro*,

16 833 F.3d at 1076. "Under this standard, the prison official must not only 'be aware of facts

17 from which the inference could be drawn that a substantial risk of serious harm exists,' but

18 that person 'must also draw the inference.'" *Toguchi*, 391 F.3d at 1057 (quoting *Farmer v.*

19 *Brennan*, 511 U.S. 825, 837 (1994)). Neither negligence nor gross negligence is actionable

20 under § 1983 in the prison context. *See Farmer*, 511 U.S. at 835–36, 836 n.4.

21      Prison officials have a duty to protect inmates from communicable diseases. *See e.g.*,

22 *Helling v. McKinney*, 509 U.S. 25, 33 (1993) (finding prison officials may not "be

23 deliberately indifferent to the exposure of inmates to a serious, communicable disease");

24 *see also Hutto v. Finney*, 437 U.S. 678, 682–83 (1978); *Andrews v. Cervantes*, 493 F.3d

25 1047, 1050 (9th Cir. 2007) (recognizing a cause of action under the Eighth Amendment

26 and 42 U.S.C. § 1983 for an alleged policy of not screening inmates for infectious diseases

27 and for housing contagious and healthy individuals together during a known "epidemic of

28 hepatitis C"). And there is no question that COVID-19 is a serious communicable disease.

5

1   *See*, *e.g.*, *Wilson v. Williams*, 961 F.3d 829, 840 (6th Cir. 2020) ("The COVID-19 virus

2   creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or

3   death."); *Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. 2020) ("The COVID-19

4   pandemic is 'unprecedented,' and no one questions that it poses a substantial risk of serious

5   harm to [prison inmates]." (citation omitted)); *Burgess v. Newsom*, No. 1:21-cv-00077-

6   SAB (PC), 2021 WL 4061611, at *4 (E.D. Cal. Sept. 7, 2021) (stating "COVID-19 is a

7   serious communicable disease"), report and recommendation adopted by, 2021 WL

8   4975140 (E.D. Cal. Oct. 25, 2021).

9       The Eighth Amendment also protects against deliberate indifference to a prisoner's

10   serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 302 (1991); *Estelle v. Gamble*, 429

11   U.S. 97, 104 (1976). In the medical context, deliberate indifference in violation of the

12   Eighth Amendment exists when a prison official knows an inmate faces a substantial risk

13   of serious harm to his health and fails to take reasonable measures to abate the risk. *Farmer*,

14   511 U.S. at 847; *Toguchi*, 391 F.3d at 1058. Specifically, a plaintiff must (1) show a serious

15   medical need by demonstrating that failure to treat a prisoner's condition could result in

16   further significant injury or the unnecessary and wanton infliction of pain and (2) show the

17   defendant's response to the need was deliberately indifferent. *Jett v. Penner*, 439 F.3d

18   1091, 1096 (9th Cir. 2006). Deliberate indifference to an inmate's serious medical needs

19   may occur in two ways: either when prison officials deny, delay or intentionally interfere

20   with medical treatment, or by the way that prison physicians provide medical care. *Estelle*,

21   429 U.S. at 104–05; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).

22   Deliberate indifference is shown by a "purposeful act or failure to respond to a prisoner's

23   pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096

24   (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992)). The defendants must

25   have known of, but disregarded, an excessive risk to the plaintiff's health. *Farmer*, 511

26   U.S. at 837.

27

28

### 2. Defendants Pollard and Moseley

Plaintiff alleges Pollard, then the Warden of RJD, "fail[ed] to provide a safe environment" for inmates during the COVID outbreak and failed to "properly monitor subordinate staff" to ensure that COVID safety protocols were being followed. FAC ¶¶ 12, 18. Similarly, he alleges Moseley, Associate Director for the California Department of Corrections and Rehabilitation ("CDCR"), "fail[ed] to enforce and monitor the CDCR medical [COVID] protocol." *Id.* at ¶ 13. Acuna states his claims against both Pollard and Moseley are "based on negligence" in failing to "ensure proper protocol was being followed" and failing to "properly screen" for COVID among inmates and staff. *Id.* at ¶¶ 12, 18. As noted above negligence is not actionable under § 1983 in the prison context. *See Farmer*, 511 U.S. at 835–36, 836 n.4. To be liable in a failure to prevent harm situation, the official must know of and disregard an excessive risk to inmate safety. *See id.* at 837. Thus, to the extent Plaintiff bases his claims against Pollard and Moseley on negligence, he fails to state an Eight Amendment claim.

Furthermore, a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Farmer*, 511 U.S. at 844; *see also Peralta v. Dillard*, 744 F.3d 1076, 1085–86 (9th Cir. 2014) (en banc). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, to state a colorable Eighth Amendment claim, a plaintiff must allege facts sufficient to show that each particular defendant was deliberately indifferent; a defendant does not become liable for an Eighth Amendment violation merely because a co-worker, supervisor, or subordinate was deliberately indifferent. *Starr v. Baca*, 652 F.3d 1202, 1206–07 (9th Cir. 2011). Specifically, to state a claim of supervisory liability, a plaintiff must allege the supervising official "knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act[, amounting] to an 'acquiescence in the unconstitutional conduct of his subordinates.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018).

1    Here, to the extent Acuna alleges staff failed to properly test Sancho before he was

2    released from quarantine or failed to properly manage the quarantining of specific inmates,

3    he has not stated a claim against Pollard and Moseley. Acuna alleges only that Pollard and

4    Moseley negligently failed to ensure the protocols put in place were followed by

5    subordinates. He fails to allege specific facts to show either Pollard or Moseley knew of

6    unconstitutional conditions and culpable actions of individual subordinates.[3] *See id.*; *see*

7    *also Cardenas-Ornelas v. Wickham*, No. 2:21-cv-00030-APG-VCF, 2021 WL 1907827, at

8    \*12 (D. Nev. May 11, 2021) (concluding Plaintiff failed to allege facts sufficient to state a

9    claim of deliberate indifference by the warden and other supervisors for "fail[ure] to ensure

10   that [COVID] protocols put in place, such as medical observations, testing, and temperature

11   checks, were followed"). Therefore, the Court dismisses Acuna's claims against Pollard

12   and Moseley for failure to state a claim upon which relief may be granted.

13        **3.    Defendant Vargas**

14   Acuna alleges Vargas, a correctional officer at RJD, "became knowledgeable of the

15   seriousness of the coronavirus pandemic and attempt[ed] to force under threat that plaintiff

16   be moved into a gym that was completely unequipped to house inmates further threatening

17   plaintiff's health." FAC ¶ 14. He contends Vargas' actions amounted to "professional

18   negligence." *Id.* He also alleges Vargas failed "to provide adequate medical care. . . based

19   on negligence in properly screening staff." *Id.* at ¶ 18. As discussed above, neither

20   negligence nor gross negligence amount to deliberate indifference. *Wood v. Housewright*,

21   900 F.2d 1332, 1334 (9th Cir. 1990). Therefore, Plaintiff fails to state a claim against

22   Vargas.

23

24   _____

25

26   [3] At least one district court has acknowledged that the Center for Disease Control guidelines during late 2020 did not require a negative test to designate an individual recovered from COVID. *See United States v. Pierre*, No. 1:19-cr-00082-DAD-BAM, 2020 WL 6785328,

27   at \*7, n.6 (E.D. Cal. Nov. 18, 2020) ("[T]he CDC guidelines apparently allow for

28   individuals to be counted as recovered from the virus without confirming test results.").

### 4. Defendants Hendricks and Glenn

Acuna alleges Glenn, CEO of the medical department at RJD, and Hendricks, Chief Deputy Warden at RJD were deliberately indifferent to his medical needs. He contends Glenn was deliberately indifferent when he "failed to establish proper housing and failed to provide proper treatment and failing to order adequate follow-up treatment" after Plaintiff contracted COVID. FAC ¶ 16. As for Hendricks, Acuna claims he was deliberately indifferent when he "fail[ed] to address the reality of the crisis that plaintiff was being forced to contend with and erroneously alleging that RJD was in compliance with health care staff guidelines [and] was deliberately indifferent towards [his] rights for adequate medical relief." *Id.* at ¶ 17.

To the extent Acuna alleges Glenn and Hendricks were deliberately indifferent to his serious medical needs after he contracted COVID, he fails to allege sufficient facts to state a claim. In the context of medical care, "[a] determination of 'deliberate indifference' involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin*, 974 F.2d at 1059; *Jett*, 439 F.3d at 1096. Here, the Court assumes COVID infection constitutes a serious medical need.

Acuna, however, provides no specific facts as to what actions Glenn or Hendricks took, or failed to take, with regard to treating Plaintiff after he contracted COVID; or what actions were taken or not taken regarding whether RJD was "in compliance" with health guidelines for inmates who contracted COVID. Acuna alleges only that after contracting COVID, the health care services department attempted to "move infected inmates as well as non-infected inmates into an open gym with poor ventilation" and with bunks only three feet apart. FAC at ¶ 8. He fails, however, to indicate what actions Glenn and/or Hendricks personally took or failed to take which resulted in deliberate indifference. As discussed above, a plaintiff must plead facts which allege that a defendant, "through their own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. The conclusory allegations contained in the FAC are insufficient to state a claim of supervisory liability.

1   *Keates*, 883 F.3d at 1243 (quoting *Starr*, 652 F.3d at 1208) (finding that conclusory

2   allegations that supervisor promulgated unconstitutional procedures which authorized

3   unconstitutional conduct of subordinates do not suffice to state a claim of supervisory

4   liability).

### 5.   Defendant Steadman

6   Acuna alleges Steadman, a licensed vocational nurse, was deliberately indifferent to

7   his serious medical needs. FAC ¶ 15. Acuna alleges only that Steadman "ignored [his]

8   medical condition" after Acuna became infected with COVID and denied him

9   "professional medical attention." *Id.* at ¶¶ 15, 18. To the extent Plaintiff contends Steadman

10  failed to provide medical care to him after he became ill with COVID, he has failed to

11  allege specific facts to sufficiently state a claim. For instance, Acuna does not include any

12  information regarding what Steadman did or did not do that amounted to inadequate

13  medical care.[4] Such generalized and conclusory allegations are insufficient to state a claim

14  for deliberate indifference. *Iqbal*, 556 U.S. at 678 (stating a court is "not bound to accept

15  as true a legal conclusion couched as a factual allegation").

### 6.   Defendant Gates

17  Finally, Acuna alleges Defendant Gates, the Health Care Appeals Coordinator,

18  failed "to provide adequate medical care" and failed to ensure he was not "adversely treated

19  due to contracting coronavirus." FAC ¶ 18, Acuna states his claim is "based on negligence"

20  in properly screening staff. *Id*. As discussed above, neither negligence nor gross negligence

21  amount to deliberate indifference. *Wood*, 900 F.2d at 1334. Therefore, Plaintiff fails to state

22  a claim against Gates.

### D.   Leave to Amend

24  In light of Plaintiff's pro se status, the Court grants him one final opportunity to

25  amend his pleading to attempt to sufficiently allege a § 1983 claim if he can and if he

---

[4] In his FAC, Acuna cites to "Ex. I" as support for his allegations against Steadman. However, there is no Exhibit I attached to the FAC.

wishes to attempt to do so. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'" (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

## III.     CONCLUSION AND ORDERS

Good cause appearing, the Court:

1.      **DISMISSES** Acuna's First Amended Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1).

2.      **GRANTS** Acuna **forty-five (45)** days leave from the date of this Order in which to file a Second Amended Complaint which cures all the deficiencies of pleading noted above. Acuna's Second Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Second Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Acuna fails to file a Second Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Acuna's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.")

1        3.      **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its

2  form complaint under the Civil Rights Act, 42 U.S.C. § 1983 for use in amending and

3  instructs Plaintiff to utilize the Court's form in amending.

4        **IT IS SO ORDERED**.

5  Dated:  June 17, 2022

6

7                                   Honorable Linda Lopez
                                    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28